**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **CRIMINAL NO.: 1:14-cr-58 (BAH)** |
| ) | |
| **DOMINGO AVILEZ URIAS,** ) | |
| also known as "Mingo," ) | |
| ) | |
| **Defendant.** ) | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

**I.   Introduction**

The Government respectfully submits this Memorandum in Aid of Sentencing, in accordance with Title 18, United States Code, Section 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2 (Nov. 2013).   The Government seeks a sentence that is sufficient, but not greater than necessary, to comply with the purposes of Title 18, United States Code, Section 3553(a); and is in accord with the terms set forth in the plea agreement.

**II.   BACKGROUND**

  **a.   Procedural History**

On March 13, 2014, a federal grand jury returned an indictment charging the Defendant with conspiracy to distribute five kilograms or more of cocaine, five hundred grams or more of methamphetamine and one thousand kilograms or more of marijuana for importation into the United States in violation of 21 U.S.C. §§ 959(a), 960, and 963; use of a firearm in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) , 924(c)(1)(A)(ii), and 924(c)(1)(B)(ii); and aiding and abetting in violation of 18 U.S.C. § 2.   The indictment also carries a criminal forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970.

On August 13, 2014, the Defendant was arrested as he attempted to enter the United States from Mexico.

On October 23, 2015, the Defendant pled guilty to Count One of the Indictment. The Defendant is scheduled to be sentenced on March 4, 2016.

### b. The Defendant's Conduct

The charges in the indictment stem from an investigation conducted by the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Homeland Security Investigation ("HIS"), and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that revealed a large-scale drug trafficking organization ("DTO") based in Sinaloa, Mexico that moved large quantities of cocaine, methamphetamine and marijuana into the United States. This investigation revealed that the Defendant worked with co-conspirators in this DTO to coordinate shipments of large quantities of narcotics into the United States.

This DTO was originally run by Arturo Beltran Leyva, one of the most powerful and violent drug traffickers in Mexico. Arturo Beltran Leyva was killed in 2009 in a shoot-out with Mexican authorities. After Beltran Leyva's death, the Defendant continued to work with DTOs aligned with the Beltran Leyvas to traffic narcotics into the United States.

Further, throughout the course of this investigation, law enforcement agents learned that the Defendant worked for Beltran-Leyva, the Defendant's father-in-law, and Beltran Leyva's brother, Hector-Beltran-Leyva, and allegedly committed acts of violence and used firearms in furtherance of drug trafficking for the Beltran Leyvas and the DTO.

More specifically, the Defendant would receive and store large quantities of cocaine, methamphetamine and marijuana that had arrived in Mexico from Colombian sources of supply. The Defendant would assist the DTO then transfer and transport these drugs into the United

2

States.   Over the course of the existence of the Beltran Leyva DTO, the Government estimates that this organization has been responsible for sending hundreds of thousands of kilograms of cocaine into the United States.   One of the ways in which the BLO DTO was so successful in this venture was the control it exercised over certain portions of Mexico.   The Defendant played an important role in this chain of distribution.   As a trusted member of the DTO, the Defendant was given the responsibility to oversee a certain area of Mexico to ensure that the instructions and orders of the leaders were being carried out.   Consequences for not carrying out the orders of the head of the organization had fatal implications.

    c.    **Legal Framework for Sentencing**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005).   Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264.   As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" - that "should be the starting point and the initial benchmark."   Gall v. United States, 552 U.S. 38, 39, (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). Gall v. United

3

States, 552 U.S. at 50.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall v. United States, 552 U.S. at 50, n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall v. United States, 552 U.S. at 38, 46.   To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."   Id. at 51.

A court should use the version of the Guidelines Manual in effect at the time of sentencing unless retroactive application of that version would result in a more severe penalty

than would result from applying the version in effect at the time of the offense. Peugh v. United States, 133 S. Ct. 2072, 2078, 2082-83 (2013) (recognizing an ex post facto violation when a defendant is sentenced under Guidelines providing a higher range than the Guidelines in effect at the time of the offense).

### III. ARGUMENT

On December 2, 2015, the United States Probation Office filed its Presentence Investigation Report ("PSR"). In the PSR, the Probation Office calculated a Total Offense Level 38, finding a two-level adjustment for possession of a firearm, while also finding a three-level offense level reduction for acceptance of responsibility. PSR ¶¶ 29, 30, 36-37.

In the instant case, the Probation Office found the Defendant's Total Offense Level at Level 37, Criminal History I (210 to 262 months). PSR ¶ 75.

The Government believes that the Probation Office's assessment of the Defendant's involvement with the DTO and his relevant conduct related to the offense of conviction are accurate and supported by the evidence in this case; but notes that it did not insist on the role enhancement as part of the Defendant's plea agreement. See United States v. Habbas, 527 F.3d 266, 269-73 (2d Cir. 2008), Cf. United States v. Palladino, 347 F.3d 29 (2d Cir. 2003). As a result, the Government takes no position on whether the Defendant should receive an aggravating role enhancement and respectfully defers to the Court's discretion as to whether the facts sufficiently support such an adjustment in this case.[1]

For the reasons stated below, the sentencing factors found in the PSR should be applied in this case. Namely, the enhancement for a firearm should be applied based on the evidence

---

[1] However, the Government is in agreement with the Probation Office's assessment that a mitigating role reduction is not warranted in this case. PSR ¶ 24.

presented through the PSR and the statement of facts. Furthermore, the statutory factors under 18 U.S.C. § 3553(a) warrant a guideline sentence of 210 to 262 months in this case. Lastly, any mitigating factors found in the PSR do not warrant a variance or departure from the applicable guideline range. Therefore, a sentence between 210 to 262 months is appropriate in this case.

  **1.  Nature and Circumstances of the Offense, and Need for the Sentence to Reflect the Severity of the Offense**

  The Defendant committed serious crimes, over an extended period of time, against the United States by his active participation in an expansive Mexican drug trafficking organization ("DTO") that was responsible for transporting multi-ton quantities of cocaine from Colombia to Mexico for ultimate importation into the United States. Indeed, the amount of cocaine that the Defendant is responsible for conspiring to import into the United States, well exceeds the highest offense level under the Sentencing Guidelines. This is a testament to the extremely serious nature of the Defendant's criminal conduct.

  As the Court is well aware, cocaine is an extremely dangerous and destructive illegal street drug. Cocaine abuse has devastated communities in the United States, Colombia, and elsewhere, ruining lives, splitting families apart, inflicting violence on innocent by-standers, and wreaking havoc on innocent family members and children. It's also a very destabilizing and corruptive force in countries throughout the region that don't have strong enough law enforcement institutions to combat it, such as in Mexico, further adding to the destructive nature of the crime. Its social costs have been enormous. The Defendant's offense involved aiding and abetting individuals in Mexico and elsewhere who imported these drugs into the United States and it also involved the Defendant's direct participation in the importation of these drugs into the United States.

Additionally, the Defendant's trafficking was not limited to only cocaine, but also methamphetamine and marijuana.  The Defendant actually brokered numerous narcotics transactions involving marijuana being illegally imported into the United States.  Further, the Defendant worked with members of the DTO involved in the production and distribution of methamphetamine.

In addition to the serious nature of the drug trafficking charges to which the Defendant pled guilty, the Defendant's role within the conspiracy highlights the seriousness of the offense. The Defendant was responsible for the DTO's operations in a "plaza" in Mexico, which is often referred to as a "plaza boss."  Further, the Defendant's role was to relay orders from leaders within the DTO to other co-conspirators regarding day to day operations of the DTO as well as information about rival cartels in the area.  As the Court is aware there has been a history of extreme violence in Mexico between rival cartels.  This has resulted in extreme loss of life to both those involved in this illegal trade, as well as innocent civilians.  The extreme violence associated with this is even further highlighted by the fact that the Defendant possessed a firearm in connection with his drug trafficking activities.

Thus, the serious nature and circumstances of this offense necessitates a sentence of 210 to 262 months.

### 2. Adequate Deterrence

Given the adverse impact that drug trafficking has on society, it is important that the Court impose a sentence that deters others from undermining the rule of law.  Further, while this prosecution has incapacitated some of the narcotics trafficking through Mexico, importation of controlled substances from Mexico and the region into the United States still occurs.  The recommended sentence would provide a critical general deterrence to other narcotics trafficking

leaders that their participation in narcotics importation into the United States will result in substantial sentences.

### 3. Protect the Public from Further Crimes of the Defendant

Prior to his arrest, the Defendant was a member of a DTO responsible for trafficking significant quantities of cocaine, methamphetamine and marijuana to the United States. By pleading guilty, the Defendant has arguably accepted responsibility for his criminal conduct, he will serve an appropriate prison sentence, and as a convicted felon, he will be deported to Mexico.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) articulates "the need to avoid <u>unwarranted</u> sentence disparities among defendants <u>with similar records</u> who have been found guilty of <u>similar conduct</u>." 18 U.S.C. § 3553(a)(6) (emphasis added). By its terms, the statute requires a specific evaluation of the compared defendants' records and conduct. When determining whether a sentence creates an unwarranted disparity, the Court should also consider, <u>inter alia</u>, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. <u>See</u>, <u>e.g.</u>, <u>United States v. Mejia</u>, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." <u>United States v. Carrasco-De-Jesus</u>, 589 F.3d 22, 29 (1st Cir. 2009).

The Defendant in this case is charged as the sole defendant. There are several related cases that are still pending, and thus not similarly situated as this case. Further, the Defendant's

8

conduct in this case is not similarly situated to those defendants in the related cases.

### IV. **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant to a term of imprisonment matching the severity of the crimes committed in this case.

                                    Respectfully submitted,

                                    ARTHUR WYATT, Chief
                                    Narcotic and Dangerous Drug Section
                                    Criminal Division
                                    U.S. Department of Justice

By:     /s/
                                    Andrea Goldbarg
                                    Amanda Liskamm
                                    Narcotic and Dangerous Drug Section
                                    Criminal Division
                                    United States Department of Justice
                                    145 N Street, NE
                                    Washington, DC 20530

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 19th day of February 2016.

                                                                                 /s/
                                            Andrea Goldbarg
                                            Amanda Liskamm
                                            Narcotic and Dangerous Drug Section
                                            Criminal Division
                                            U.S. Department of Justice
                                            145 N Street, NE
                                            Washington, DC 20530