**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | **CRIMINAL NO.: 1:14-cr-58 (BAH)** |
| ) | |
| **DOMINGO AVILEZ URIAS,** ) | |
| also known as "Mingo," ) | |
| ) | |
| **Defendant.** ) | |

<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM</u>

The Government respectfully submits this Response to the Defendant's Sentencing Memorandum filed on February 29, 2016. The Defendant asks the Court to essentially make a five-level downward departure in this case due to his age, lack of criminal record, unique family circumstances and early acceptance of responsibility. <u>See</u> Def. Sent. Memo. at 2. Not only are these arguments misplaced, but even if accepted on their face, they do not warrant such a drastic departure. Rather, an analysis of the § 3553(a) factors, specifically the nature and circumstances of the offense, warrants a sentence of 210 to 262 months incarceration in this case.

**I.     <u>The Defendant's Arguments Fail To Justify The Requested Sentence</u>**

First, the Government notes that the Defendant appears to greatly minimize his conduct in this case and barely accepts any responsibility for the conduct he plead guilty to. Namely, the Defendant blames his drug trafficking on his family's circumstances and claims that his "young age" allowed him to be vulnerable to recruitment into drug trafficking. <u>Id</u>. This contradicts his later discussion about the legitimate business ventures his father was involved with. Def. Sent. Memo. at 6. To be clear, the Defendant's father was a drug trafficker involving in trafficking large loads of marijuana into the United States. The Defendant's father introduced the

Defendant to marijuana trafficking and many of the individuals that the Defendant worked with throughout the course of the charged conspiracy.  Further, the Defendant not only took over the family business, but expanded it into cocaine and methamphetamine loads being trafficked to the United States as well.

The Defendant apparently blames his father's drug trafficking for the Defendant's conduct in the instant offense.  However, the Defendant overlooks the fact that his own siblings, who also grew up in the same family with a father involved in drug trafficking, chose not to traffic narcotics and are gainfully employed.  See Def. Sent. Memo at 6-7.  This speaks volumes as to the Defendant's culpability in this offense and the conscious decision he made to become so intimately involved in the drug trafficking world.

It is unfortunate that after seeing the result of his own father's involvement in drug trafficking, the Defendant failed to change his life after his son was born.  It is even more unfortunate that the Defendant now uses the fact that his son is being negatively impacted by the Defendant's incarceration as an attempt at a departure from the Guidelines.  Further, the Defendant stresses the negative impact on his family in Mexico while he is incarcerated. However, every family in this situation is equally impacted when a loved one is incarcerated and this can all be attributed to the choices the Defendant made over the course of the 14 year conspiracy.

Further, the Defendant was not an unwilling participant innocently recruited into the drug trafficking world as he likes to depict.  Rather, the Defendant became a major player in a violent and powerful cartel that controlled tonnage quantities of narcotics entering the United States. The Defendant also fails to acknowledge his involvement for at least 14 years in drug trafficking as a means of employment, and instead only discusses any other type of possible employment

such as jobs with political parties, a clothing business, used cars and taxis.  Def. Sent. Memo. at 11-12.  The Defendant glosses over the marijuana, cocaine and methamphetamine shipments the Defendant and his co-conspirators were sending to California, Arizona, New York, Texas and Florida.  Thus, the Defendant's characterizations throughout his sentencing memorandum greatly minimize his role and involvement in the drug trafficking organization.

Next, the Defendant claims that a mitigating circumstance that warrants such a drastic departure is his lack of a criminal history.  However, the Defendant's lack of any prior arrests only reflects his ability to avoid law enforcement contact.  Indeed, the Defendant plead guilty to drug trafficking from 2000 to 2014 – over a decade.  The Government proffers that it would have been able to prove at trial that the Defendant began transporting loads of approximately 500 pounds of marijuana at a time into the United States from as early as 2000.  The Government further proffers that it would have proven at trial that the Defendant continued his involvement in drug trafficking up until at least 2014, expanding into cocaine and methamphetamine loads as well.  Further, a review of border crossing records shows that between 2001 and his arrest in 2014, the Defendant crossed into the United States from Mexico approximately 245 times.[1]  The majority of these crossings were within days of each other.  This pattern of crossings is consistent with an individual involved in moving loads of narcotics from Mexico to the United States.  Thus, the Defendant's apparent lack of criminal history is not at all an accurate picture of his criminal conduct.

Additionally, as discussed in the Government's Motion for Pretrial Detention, the

---

[1] The Defendant states that he came to the United States when he was 15 years old which was his "first and only occasion that he spent any appreciable time in this country" Def. Sent. Memo. at 7. Clearly, this is not an entirely accurate characterization of the Defendant's time in the United States.

Defendant was previously issued a tourist visa to enter the United States based on false information.  See Govt. Motion for Pretrial Det. (Docket Entry No. 9) at 3.  Specifically, on the Defendant listed a United States company as his employer on the visa application, however, the Defendant never worked for that company and the owner of that company was convicted of drug trafficking.  Id.  This coupled with the underlying conduct in this case reinforces that Defendant's criminal history is not a mitigating factor, but rather should be viewed as an aggravating factor in this case.

In sum, the Defendant makes a gallant effort in attempting to distract the Court from the serious nature and circumstances of this case, and the seriousness of the case.  Indeed the § 3553(a) factors warrant a Guidelines sentence in this case.  The Defendant's arguments do not warrant a departure from the Guidelines in this case, and a sentence of 210 to 262 months is warranted in this case.

**II.     A Guideline Sentence is Warranted In This Case**

An analysis of the § 3553(a) factors clearly demonstrates that a sentence of 210 to 262 months is necessary in this case.  The serious nature and circumstances of this case clearly merit a Guideline sentence.  This Defendant was a plaza boss involved in trafficking extremely large quantities of cocaine, methamphetamine and marijuana into the United States.  Indeed, the Defendant plead guilty to trafficking quantities of cocaine, methamphetamine and marijuana that put him at the top offense level for drug trafficking offenses which highlights the seriousness of the offense.  As noted above, this conduct transpired over a decade where the Defendant diversified from just marijuana loads to cocaine from Colombia that the Defendant would receive, inventory and store before they were illegally trafficked into the United States, as well as methamphetamine manufactured in Mexico and illegally imported into the United States.

The Government also proffers that it would have been able to prove at trial that the Defendant ran the plaza of Nayarit – an area known for Cartel violence.  The Court is well aware of the extreme violence that often coincides with drug trafficking in Mexico.  Indeed, the Defendant admittedly carried a firearm throughout the course of the drug trafficking conspiracy.  In fact, the Defendant was initially charged with a violation of 18 U.S.C. § 924(c), which if the Defendant had been found guilty of this offense, would have carried a consecutive mandatory sentence.  That the Defendant did not plead guilty this offense does not diminish the seriousness of this crime.

The Court provided a Notice of sentencing statistics (See Docket Entry No. 27) which shows that between 2010 and 2014 there were four defendants sentenced for violations of 21 U.S.C. § 959, 960 and 963.  The chart excluded individuals who were safety-valve eligible or who received a sentencing reduction pursuant to U.S.S.G. § 5K1.1.  Of those four defendants, two received guideline sentences, one received a sentence under a diversionary program, and the other one received a sentence below the guidelines range at the Government's request.  This case is clearly most akin to the two defendants who received guideline sentences.  Further, as the Government is not requesting a below range sentence, nor is a diversionary program at play in this case, any sentence below the guideline range would result in unwarranted sentencing disparities.

Further, a below guideline sentence would not be an adequate proxy for the Defendant's conduct and culpability in this case.  The Defendant cites United States v. Cabrera, 567 F.Supp.2d 271 (D. Mass. 2008) as an example for a below guideline sentence.  However, in Cabrera, the defendant in that case was merely a delivery man who was safety-valve eligible, received a minor role adjustment, and had "little or no idea about what was going on in the drug

5

deal."  The Court is <u>Cabrera</u> goes onto discuss the correlation between the drug quantities, the seriousness of the offense and how it corresponds to the purposes of § 3553(a).  "The problem is that sometimes it is an adequate proxy, and sometimes it is not."  <u>Id</u>.  Clearly, this case is a text book example for the guidelines being an adequate proxy of the seriousness of the offense.  A plaza boss who has been trafficking extremely large loads of cocaine, marijuana, and methamphetamine into the United States for over a decade while also carrying a firearm clearly warrants a sentence of 210 to 262 months.

    For the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant to a term of imprisonment matching the severity of the crimes committed in this case.

                                              Respectfully submitted,

                                              ARTHUR WYATT, Chief
                                              Narcotic and Dangerous Drug Section
                                              Criminal Division
                                              U.S. Department of Justice

By:     __/s/_____
           Andrea Goldbarg
           Amanda Liskamm
           Narcotic and Dangerous Drug Section
           Criminal Division
           United States Department of Justice
           145 N Street, NE
           Washington, DC 20530

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 2nd day of March 2016.

                                                                                       /s/
                                                Andrea Goldbarg
                                                Amanda Liskamm
                                                Narcotic and Dangerous Drug Section
                                                Criminal Division
                                                U.S. Department of Justice
                                                145 N Street, NE
                                                Washington, DC 20530